**Gustave T. SWOBODA and Emily L. Swoboda, his wife, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 17443.**

United States District Court
E. D. Pennsylvania.

Nov. 12, 1957.

Kimber E. Vought, Richard J. Partridge, James L. Baxter, Philadelphia, Pa., for plaintiffs.

W. Wilson White, U. S. Atty., Robert J. Spiegel, Asst. U. S. Atty., Philadelphia, Pa., for defendant.

WATSON, District Judge.

This action arises out of a claim for refund of income taxes for the year 1950 which was disallowed by the Director of Internal Revenue for the First District of Pennsylvania. Counsel have filed a Stipulation of Facts which, by reference, the Court adopts as its Findings of Fact. The case was tried by the Court without a jury.

Plaintiffs in this action are husband and wife who, for the calendar year 1950, filed a joint federal income tax return in the First District of Pennsylvania. The return was audited and, as a result of this audit, an additional assessment was made against the taxpayers resulting, in part, from the disallowance of a deduction for a net operating loss incurred by the H. J. Llewellyn Company and a claimed capital loss resulting from the sale of that company.

Henry J. Llewellyn died testate on March 19, 1940, a resident of Pennsylvania and survived by three children, one of whom is the wife-plaintiff in this action. The principal assets in the estate were a baker's supply business, known as the H. J. Llewellyn Company, and a dwelling at 37 Johnson Street, Philadelphia, Pennsylvania.

By his will the baker's supply business was left in trust for the benefit of his three children. The pertinent portions of this will are as follows:

"Third: All the rest, residue and remainder of my estate * * * I give * * * to my trustees * * * In Trust * * * to manage * * * my said estate * * * for a period of ten years from the date of my death. * * *"

"Fourth: At the expiration of ten years from the date of my death, I direct my trustees to pay over to * * * Emily Swoboda, one third of the principal or corpus of my estate, absolutely, and in fee simple. * * * *"

"Sixth: I order and direct that the business which I operate as H. J. Llewellyn Co. * * * which forms a part of my residuary estate, shall be continued by my son, Clinton F. Llewellyn, for a period of ten years after my decease. * * * If my business shall have been operated during the ten years subsequent to my decease, I order and direct that its further continuance or disposition shall be determined by the decision of any two of my three children. * * *"

The will contained a direction that the three surviving children and the Corn Exchange National Bank and Trust Company of Philadelphia be appointed as trustees.

The ten year period from decedent's death expired on March 19, 1950 and the trustees then filed an accounting of the annual net profit and loss of the estate to the end of 1949, and annual distributions to the beneficiaries.

On June 1, 1950, the H. J. Llewellyn Company was sold for $40,000 and on June 1, 1950 the trustees filed with the Orphans Court a statement of proposed distribution which included a proposal which would give effect to the sale of the business. The account was confirmed by the Orphans Court on June 16, 1950 and the schedule of distribution was approved by the Court on June 5, 1952.

During the period from March 20, 1950 through May 31, 1950, the H. J. Llewellyn Company had a net operating loss of $14,208.52. The capital loss of the business was as follows:

| | |
|---|---|
| Book value at March 19, 1950 | $99,051.63 |
| Selling price | 40,000.00 |
| Capital Loss | $59,051.63 |

The question is whether one-third of the net operating loss of the H. J. Llewellyn Company for the period from March 20, 1950 to May 31, 1950, and the capital loss on the sale of the company should be considered as losses of the taxpayers or as losses of the trust created by the will of Henry J. Llewellyn.

### Discussion

It is unnecessary to restate at length either the facts or the statement of the case in this Discussion and the Court will confine itself to the resolution of the question presented in the lawsuit.

The important issue is whether or not the trust terminated on March 19, 1950, which is the date the ten year term expired as provided under the will. Under the Internal Revenue Code of 1939, 26 U.S.C.A. §§ 142(a, c), 161(a) (1), 162, only the trustee can claim the losses if the trust did not terminate on that date. Brigham v. United States, D.C., 38 F.Supp. 625, affirmed 1 Cir., 122 F.2d 792; Busch v. Commissioner, 5 Cir., 50 F.2d 800. In order to determine when the trust terminated we must look to the law of Pennsylvania.

A careful search has satisfied the Court that the trust with which we are concerned did not terminate until at least June 1, 1950. The leading case on this subject is In re Thaw's Estate, 163 Pa. Super. 484, 63 A.2d 417, 419. In that case the Court stated:

"At least prior to the death of the life beneficiary the trust was an active trust; there is no semblance of a suggestion to the contrary. Upon the death of Henry Kendall Thaw, it may be that the legal title to the trust property passed to the remaindermen or his appointees. But we are of the opinion that the trust did not necessarily come to an end upon the happening of that event. His death did not make accountant thereupon a mere custodian, and the notice to take in kind did not ipso facto change an active trust into a mere custodianship * * *."

That Court also cited with approval the Restatement of Trusts, vol. II, Section 344, Comment (a) which states that:

"Although the time for the termination of the trust has arrived in accordance with the terms of the trust, the trustee does not thereby necessarily cease to be trustee, but he continues to be trustee until the trust is finally wound up. The period for winding up the trust is the period after the time for termination of the trust has arrived and before the trust is terminated by the distribution of the trust property."

We have found nothing in the law of Pennsylvania which disagrees with this pronouncement of the Superior Court.

The parties agree that the trustees, on June 1, 1950, filed a statement of proposed distribution and they also agree that it was prior to this date that the losses occurred. It is evident, therefore, when the facts of the case are viewed in the light of the Thaw case, that the losses occurred during the period when the trust was in existence and not, as plaintiff argues, after the trust had terminated. Accordingly, judgment should be for

.the defendant and against the plaintiff in this case.

### Conclusions of Law

1. This Court has jurisdiction over the parties and the subject matter.

2. The taxes imposed upon plaintiffs by the United States were proper and the United States acted according to law in disallowing the refunds claimed by plaintiffs.

· 3. Judgment should be entered for the Defendant, United States of America, and against the Plaintiffs, Gustave T. Swoboda and Emily L. Swoboda, his wife.